IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 27, 2007

## STATE OF TENNESSEE v. AYATOLAH W. WALLACE

**Direct Appeal from the Criminal Court for Bradley County**
**Nos. 04-204, 04-205, 04-206     Carroll L. Ross, Judge**

---

**No. E2007-00150-CCA-R3-CD - Filed February 7, 2008**

---

The defendant, Ayatolah W. Wallace, was convicted of three counts of aggravated kidnapping and sentenced to sixteen years in the Department of Correction as a Range II, violent offender. He argues that his convictions must be overturned in light of State v. Anthony, 817 S.W.2d 299, 301 (Tenn. 1991), which precludes dual convictions for kidnapping and another accompanying felony when the movement or confinement supporting the kidnapping charge is merely incidental to that required to commit the accompanying felony. Because the defendant was convicted only of aggravated kidnapping, however, Anthony is inapposite. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Richard Hughes, District Public Defender; John P. Fortuno, Assistant Public Defender (on appeal); Sean Williams and Wayne Carter, Assistant Public Defenders (at trial), for the appellant, Ayatolah W. Wallace.

Robert E. Cooper, Jr., Attorney General and Reporter; James E. Gaylord, Assistant Attorney General; Robert Steve Bebb, District Attorney General; and Dorothy Atwell and Wylie Richardson, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### FACTS

At trial, Amy Ashe testified that on December 18, 2003, she was separated from her husband, the late Dennis Allen Ashe. Ms. Ashe went to her husband's apartment to confront him after learning that another woman had been seen entering the apartment. Mr. Ashe refused to allow her into the apartment so she went across the street "to spy." She saw two black males and a white male

approach the apartment; the black males entered while the white male remained outside. A few minutes later, one of the black males emerged and spoke with the white male, then both entered the apartment.

Ms. Ashe returned to the apartment and, as she approached the door, heard muffled screaming and sounds of a struggle. Mr. Ashe opened the door, pulled his wife into the apartment, and told the three men, "My wife is here now, you all just need to please leave, just please leave." Ms. Ashe later learned that the three men were Patrick Lee Jones, Timothy Saxe, and the defendant. She noticed that Mr. Ashe's pants were on wrong side out and his shirt was torn and saw Melissa Moats sitting on the couch crying. Ms. Ashe testified that the defendant and Jones both had knives; Jones' knife was five to six inches long. The defendant told Jones that no one was to leave and then forced Mr. Ashe to go upstairs with him. While the defendant and Mr. Ashe were upstairs, Ms. Ashe heard Mr. Ashe tell the defendant that he did not have any money, to which the defendant repeatedly replied, "You owe me $450.00 and you are a narc and narcs get dealt with." Mr. Ashe then said, "Stop it man, stop it. What's wrong with you? Stop it. Why do I owe you money, what do I owe you money for? If I owe you money then what do I owe it to you for?" Ms. Ashe began crying and asked Jones and Saxe to allow her to leave to see her son, but they refused. Saxe approached her and punched her on the arm. Then the defendant and Mr. Ashe descended the stairs in a struggle, and Ms. Ashe noticed that Mr. Ashe was bleeding from his neck. Mr. Ashe attempted to dial 9-1-1, but Jones removed the phone cord from the wall and cut it. The defendant then forced Mr. Ashe back upstairs. Shortly thereafter, Officer Parks of the Cleveland Police Department arrived, and Ms. Ashe told him that the defendant was holding Mr. Ashe upstairs. As Officer Parks ascended the stairs to investigate, Jones and Saxe ran out the front door.

On cross-examination, Ms. Ashe testified that none of the three men forced their way into the apartment. She said she was not living with her husband at the time of the incident because he had a drug problem. She testified that later on the night of the incident she identified Jones and Saxe from a physical line-up, and several months later she identified all three men in a photographic line-up.

Melissa Moats testified that she knew Dennis Ashe because they used drugs together. She said she "[p]artially" remembered the evening of December 18, 2003, and was "pretty drunk" at the time. That night, she was visiting Mr. Ashe to buy drugs when she heard a knock on the door. She testified that Mr. Ashe answered the door, there was a commotion, and a black male came upstairs and dragged her down the stairs by her hair, holding a knife to her throat. She said a white male blocked the door as a second black male detained Mr. Ashe with a knife. As the men argued, Ms. Ashe came to the door and the men allowed her inside. Ms. Moats testified that she did not try to leave because she was afraid. On cross-examination, she acknowledged that she did not remember how she arrived at Mr. Ashe's apartment or what time the events in question took place.

Timothy Saxe, a codefendant, testified that he pled guilty to kidnapping charges and was sentenced to eight months in jail and probation in return for his truthful testimony about the events of December 18, 2003. He said the defendant and Jones picked him up from his house and told him

they were going to get some marijuana. When the three men arrived at Mr. Ashe's residence, he waited outside while the other two searched Mr. Ashe's truck and entered the apartment. After approximately ten to fifteen minutes, Saxe walked inside and heard the defendant yell, "You owe me money," and Mr. Ashe reply, "I don't know what you are talking about, I don't owe you no money." Jones searched the apartment while the defendant hit Mr. Ashe in the face, demanding money. When Ms. Ashe knocked on the door, the defendant was on top of Mr. Ashe, strangling and hitting him. Ms. Ashe attempted to separate the two men, but Saxe pulled her away. When the police arrived, Saxe ran out the front door.

Saxe recalled that both Jones and the defendant carried knives that night. He testified that the victims appeared scared and tried to leave, but Jones would not let them. He said he had no role in the incident and was only there to buy drugs. On cross-examination, Saxe testified that he carried a pocketknife with him that night but did not display it. Although unsure, he said he believed Mr. Ashe allowed Jones and the defendant into the apartment and that they did not force their way in.

Officer Bill Parks of the Cleveland Police Department testified that he was called to Mr. Ashe's apartment on December 18, 2003, to investigate a disconnected 9-1-1 call. When he arrived, he saw two males to his right and two females sitting on a couch. He recognized Ms. Ashe, who said, "He's upstairs with Allen [Ashe]." Mr. Ashe then emerged from upstairs and said, "Get him, get him, it's Black[1]. . . he's getting out the window." Officer Parks ascended the stairs as the two males to his right exited through the front door. When he arrived upstairs, the bedroom window was open, but he did not see anyone. He ran down the stairs and outside and embarked on a foot pursuit with Officer Steve Ross. The two officers apprehended Saxe, and Officer Parks was returning to the apartment complex when he noticed a dark purple car he had seen the defendant driving previously. He discovered the defendant hiding inside the vehicle and took him into custody.

Detective Kevin Felton of the Cleveland Police Department testified that he observed a patrol officer conduct a "show-up" at the crime scene in which Mr. and Ms. Ashe identified the defendant and Saxe as two of their assailants. He later displayed a photographic line-up to Ms. Ashe from which she identified Jones as the third assailant.

The defendant testified that on the day of the incident he received a call from Mr. Ashe, who wished to purchase drugs from him. He went to Mr. Ashe's apartment, sold him cocaine, and left. He later received a second phone call from Mr. Ashe requesting more drugs and asked Jones to drive him back to Mr. Ashe's apartment; they picked up Saxe on the way. When the three arrived at the apartment complex, Ms. Ashe was standing outside and accompanied Mr. Ashe and the defendant into the apartment. The defendant testified that Mr. and Ms. Ashe began arguing about Ms. Moats. He took Mr. Ashe aside and asked for payment for the drugs he previously delivered. Mr. Ashe first responded that he did not have any money and then told the defendant his money was upstairs. When he and Mr. Ashe went upstairs to retrieve the money, the defendant heard Jones say, "Black,

---

[1] Saxe's testimony indicated that the defendant is also known as "Black."

police out here." He jumped out of the bedroom window because he was carrying an ounce of cocaine. The defendant testified that he did not carry a knife to Mr. Ashe's apartment that night.

After deliberation, the jury found the defendant guilty of the aggravated kidnappings of Dennis Allen Ashe, Amy D. Ashe, and Melissa Kay Moats. The trial court sentenced him on each count to sixteen years in the Department of Correction, with all three sentences to be served concurrently.

## ANALYSIS

The defendant presents for our review "whether the facts on which the kidnapping charge[s] [are] based are an integral part or essential element of the other felony being committed." He argues that the confinement of the victims which supports the aggravated kidnapping charges was incidental to the commission of an aggravated robbery which took place simultaneously. He contends that "without separate acts interrupting the robbery, defendant should not have been convicted of kidnapping." The State argues that the defendant's conviction comports with due process because he was convicted only of aggravated kidnapping, and not aggravated robbery. As we shall explain, we agree with the State.

The defendant relies on State v. Anthony, 817 S.W.2d 299 (Tenn. 1991), in arguing that his aggravated kidnapping convictions must be dismissed. There, Anthony and an accomplice robbed a restaurant in Knox County. While the accomplice detained three employees behind the restaurant, Anthony entered and ordered a manager and a waitress to accompany him to the office to open the safe. After retrieving the contents of the safe, Anthony encountered another employee leaving the restroom and ordered him to return to the restroom and remain there. Then he and his accomplice departed the restaurant. Anthony was convicted of the armed robbery of the store manager, the armed burglary of the restaurant, and the aggravated kidnappings of all six employees. Id. at 301. The Tennessee Supreme Court upheld this court's reversal of each of Anthony's aggravated kidnapping convictions, holding that due process principles preclude dual convictions where the "confinement, movement, or detention is essentially incidental to the accompanying felony and is not, therefore, sufficient to support a separate conviction for kidnapping . . . ." Id. at 306.

The case at bar is distinct from Anthony because the defendant in the present appeal was not convicted of another offense in addition to kidnapping. As the State correctly argues, this court has previously held that there must be separate convictions before Anthony can be applicable:

> [T]he Anthony analysis only applies when there are *convictions for two offenses* and one offense is essentially incidental to the other. . . . The Anthony rule does not mean that when a kidnapping is essentially incidental to a robbery, the evidence of the kidnapping is insufficient to support a conviction as a matter of law because any removal or confinement is too short or inconsequential to establish the elements of the offense. Rather, the Anthony rule means that separate convictions cannot stand

-4-

because, even though the evidence is sufficient to support both convictions, principles of due process would be offended by two separate convictions.

State v. Turner, 41 S.W.3d 663, 671 (Tenn. Crim. App. 2000) (emphasis in original).

As in Turner, the Anthony rule is inapplicable in this case because the defendant was tried and convicted only of the aggravated kidnappings. Therefore, the defendant's argument is without merit.

## **CONCLUSION**

Based upon the foregoing authorities and reasoning, the judgments of the trial court are affirmed.

_____
ALAN E. GLENN, JUDGE